IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| TECH USA, INC.<br>8334 Veterans Highway<br>Millersville, MD 21108,<br>a Maryland Corporation | * | |
| | * | |
| | * | Civil No. _____ |
| Plaintiff | | |
| v. | * | |
| J. SCOTT EVANS, and<br>1823 Bur Oak Drive<br>Allen, TX 75002 | * | |
| | * | |
| and | * | |
| PLACEMENT SOLUTIONS, INC., a Texas<br>Corporation<br>Serve: J. Scott Evans, Registered Agent<br>1823 Bur Oak Drive<br>Allen, TX 75002 | * | |
| | * | |
| | * | |
| Defendants | | |

\*       \*       \*       \*       \*       \*       \*       \*

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

NOW COMES the Plaintiff TECH USA, INC. ("TECH USA") by and through its attorneys Allan P. Hillman of Shipman and Goodwin, LLP and Grover C. Outland, III, General Counsel, TECH USA, INC., and sues Defendants J. Scott Evans ("Evans") and Placement Solutions, Inc. ("PSI"). TECH USA sues Defendant Evans for breaches of contract (violation of post-term covenants not to interfere with Plaintiff's servicing and earning revenue from certain designated customers, not to solicit TECH USA employees to terminate their employment or business relationship with Plaintiff, and not to solicit customer(s) to terminate, eliminate, or reduce business relationships with Plaintiff, and breach of Defendant Evans' confidentiality obligations to Plaintiff); and for breach of duty of loyalty/other fiduciary duties. TECH USA

sues both Defendants Evans and PSI for tortious interference; for trade secret misappropriation in violation of the "Maryland Uniform Trade Secrets Act," Md. Comm. Law Code Ann. §11-1201, et seq.; and for common law unfair competition.

## JURISDICTION AND VENUE

1.    TECH USA is a Maryland corporation with its principal place of business at 8334 Veterans Highway, Millersville, MD 21108.    Its Chairman and CEO is Thomas B. Howell. TECH USA, which Mr. Howell started in a single 1,000 square foot office in Millersville in early 1998 has, in the past 10 years, grown to 14 offices in 11 states.   (The Millersville headquarters of Plaintiff has recently been expanded to more than 4,200 square feet.)

2.    TECH USA is a small to mid-size competitor in the nationwide and worldwide market for providing customized staffing and consulting support to commercial and government clients.   It has expertise particularly in the areas of engineering, information technology, aerospace and government services, applications, infrastructure/telecom, and scientific.   Its competitors include companies ranging from those with revenues of many hundreds of millions of dollars (or more) to small start-ups. TECH USA develops close working relationships with its existing and prospective corporate (and other) customers in order better to understand and service their personnel and hiring needs, whether (a) via contract assignments of TECH USA personnel to the customer's (or its end-client's) projects ("Contract Assignments"), (b) by means of finding, screening and referring direct placements of new employees to join the customer's payroll ("Direct Placements"), and/or (c) by participating directly in the customer's projects via subcontracting.

3.    Defendant Evans is an individual and, on information and belief, a citizen of Texas. His last known domicile is 1823 Bur Oak Drive Allen, TX 75002.

2

4.     Defendant PSI is a corporation with Certificate of Formation filed with the Texas Secretary of State on March 17, 2006. That Certificate of Formation sets forth an address for PSI of 1823 Bur Oak Drive, Allen, TX 75002, which is Defendant's residence address. On information and belief, Defendant Evans owns all or a majority of its common stock and is an officer and director of PSI.

5.     As set forth in detail below, Defendant Evans entered into a Confidentiality/Non-Competition Agreement (Overhead Employees) ("Confidentiality/Non-Competition Agreement") with TECH USA, as employer, as of July 24, 2006, a true and correct copy of which is attached to this Complaint as **Exhibit A.**

6.     This Court has jurisdiction under all counts of this Complaint pursuant to 28 U.S.C. §1332, because the parties are of diverse citizenship and the amount in controversy, with respect to the equitable claims alone, exclusive of interest and costs, exceeds the sum of $75,000. Jurisdiction and venue are proper in this judicial district because Defendant Evans expressly agreed in paragraph 7 of the Confidentiality/Non-Competition Agreement with Plaintiff that he

> hereby consent[s], in any action brought in connection with any matters described in paragraph 5 of this Agreement [providing for injunctive relief where TECH USA has been caused immediate irreparable harm], to the jurisdiction of any federal or state court within the State of Maryland, and [he] waive[s] all questions, issues, and defenses as to personal jurisdiction and venue for the purpose of carrying out this provision.

7.     Paragraph 8 of the Confidentiality/Non-Competition Agreement generally requires "Disputes" between the parties to be resolved by arbitration pursuant to the then-prevailing Employment Dispute Resolution Rules of the American Arbitration ("AAA"), with all demands to be filed with the Washington, D.C. or Atlanta, GA regional office of the AAA, and all arbitration proceedings to take place in the Baltimore, MD metropolitan area, with an exception

3

for, among other things, legal actions for matters described in paragraph 5 of the Agreement (for example, claims for injunctive relief, as in the current case).

8.      Agreement ¶ 5 provides that in the event of any breach of the "above provisions" of the Agreement (i.e., paragraphs 1-4, including, without limitation, covenants relating to Confidential Information, Trade Secrets, Company Property, Non-solicitation, and Non-competition), such breach will cause TECH USA "immediate irreparable harm and that no remedy at law would be adequate to compensate [TECH USA] in any such event." And, further, in the event of any such breach, Defendant Evans agreed in ¶ 5 that Plaintiff "shall have the right to proceed directly to any state or federal court in Maryland under the usual equity rules in order to obtain injunctive relief, including, without limitation, temporary restraining orders, preliminary injunctions and permanent injunctions against such breach (threatened or otherwise)." Agreement ¶ 5 further provides that the injunction shall run for a period of twelve months from the date the injunction is granted, rather than twelve months from the date of Termination of Employment.

## THE CONTROVERSY

9.      On or about July 24, 2006, Defendant Evans became an at-will employee of TECH USA and its Vice President, Mortgage & Finance, resident at TECH USA's Dallas office. As such, he had significant sales and management responsibilities. As recited above, he had entered into the Confidentiality/Non-Competition Agreement with TECH USA as he joined the company and commenced those responsibilities.

10.      As set forth below, the Confidentiality/Non-Competition Agreement protects TECH USA's Confidential Information and Trade Secrets, and also requires Defendant Evans (as well as other of Plaintiff's management, sales and recruiting employees) to refrain from, among other

4

things, competing with TECH USA for a limited period of time and/or soliciting TECH USA's customers and employees after leaving its employ. TECH USA, like many of its competitors, has two basic categories of employees: internal employees such as Defendant Evans who are involved in sales or recruiting to obtain new contracts and to recruit external employees to staff them via Contract Assignments, and the external employees themselves (also known as contractors) who are recruited by TECH USA's internal employees to work on customer's sites at a contractually-agreed hourly bill rate in excess of the pay rate that TECH USA pays to each contractor for the Contract Assignment. Another less significant way that TECH USA's internal employees can derive revenue for the company is to provide Direct Placements to Customers; under that mode of doing business, a TECH USA recruiter proposes a candidate to a Customer for that Customer to add to its payroll, pursuant to a Direct Placement agreement that a TECH USA salesperson has obtained, and TECH USA earns an up-front fee based on an agreed percentage of the candidate's first year annual salary as an employee when s/he joins the Customer's payroll.

11.    Defendant Evans was brought on as a TECH USA employee in July 2006 not only to expand on the few customer relationships he had in Dallas, but to build TECH USA's Professional Services vertical (or division), consisting of Mortgage & Finance, Accounting, and other professional services lines of business. In addition to making Direct Placements as he and Defendant PSI had been doing just before he joined TECH USA, Defendant Evans agreed that he would have to work closely with TECH USA management to develop and expand in the Professional Services vertical/division (and with his few previous Customers) the business of Contract Assignments, which is TECH USA's "bread and butter."

5

12.     Over the course of Defendant Evans' approximate 18 months of association with TECH USA and with its Dallas internal employees, Plaintiff experienced numerous problems with the way Evans managed the Dallas office, performed business development, and developed and mentored other TECH USA internal employees. He was also unable to develop Contract Assignments with Customers he had previously serviced, and the Professional Services vertical (or division) became mired down and a mostly unproductive line of business due to Defendant Evans' lack of leadership and execution. During his 18-month tenure with Plaintiff, Defendant Evans, a Vice President charged with significant business development and account acquisition responsibilities, was unable to obtain or develop (and then sustain) a single new Professional Services account with Contract Assignments for TECH USA.

13.     In early January 2008, TECH USA decided to terminate its <u>at will</u> employee Defendant Evans. Defendant Evans was notified of his termination of employment in a telephone call with TECH USA's Vice President Greg Ponzoli on January 7, 2008. As a follow-up to that telephone conference, a memorandum was signed on or about January 17, 2008 by Greg Ponzoli, on behalf of TECH USA, and Evans regarding certain business points (the "Termination Business Points Memorandum") pertaining to Defendant Evans' termination and providing for certain commissions and other <u>de minimis</u> payments to Evans (none of which payments TECH USA was contractually or otherwise obligated to make) and the preparation of a legal release form (to be signed). The first sentence of the Termination Business Points Memorandum unequivocally confirmed that Defendant Evans' termination from TECH USA employment was effective as of January 7, 2008. That Termination Business Points Memorandum was subject to, among other things, Evans continuing to abide by his obligations under the Confidentiality/Non-Competition Agreement and signing the TECH USA-form

6

termination/severance/release/confidentiality agreement (the "Legal Agreement on Termination and Release") that TECH USA's Legal Department was to begin preparing after that Memorandum had been signed.

14. After the Termination Business Points Memorandum had been executed, Defendant Evans refused to sign the Legal Agreement on Termination and Release. Around the time of that refusal, TECH USA learned of certain serious breaches by Evans of his obligations under the Confidentiality/Non-Competition Agreement. A major corporate Customer of TECH USA called and stated that Evans or someone acting for him (a male voice) had contacted that Customer and, apparently referring to the Customer's financial circumstances, stated that "TECH USA was unwilling to support [that Customer in the future] due to [that Customer's] lack of stability," a complete falsehood that caused TECH USA damage and irreparable harm in that the Customer withdrew business from TECH USA.

15. Furthermore, TECH USA learned that, at some point in late January or early February 2008, Evans attempted to divert two TECH USA contractors (external employees) to become his (or Defendant PSI's) own employees after they had been recalled through TECH USA to work on assignment to the TECH USA Customer that had recently laid them off. Under Defendant Evans' scheme, those two contractors would simply work for him - - on assignment to the same Customer. In the course of that diversion effort, Defendant Evans unlawfully used and exploited for his own benefit (and/or for the benefit of Defendant PSI) TECH USA's Confidential Information (as defined in the Confidentiality/Non-Competition Agreement Evans signed with Plaintiff) and TECH USA's Trade Secrets.

16. At some point before or after his termination, Defendant Evans also wiped clean (or caused to be wiped clean) the hard drive on the laptop computer that TECH USA issued him

as stated above. Evans' company, Defendant PSI, participated with Defendant Evans in those actions.

20.     During late January and early- to mid-February 2008, Plaintiff TECH USA learned of Defendants Evans' violations of his Confidentiality/Non-Competition Agreement and violations of his duty of loyalty and other fiduciary duties. This suit followed promptly.

21.     Under paragraph 1 (<u>Confidential Information/Trade Secrets</u>) of the Confidentiality/Non-Competition Agreement between Defendant Evans and Plaintiff (Exhibit A hereto, <u>supra</u>), Defendant Evans agreed that "during [his] employment by [TECH USA] and, after [his] termination, whether by [Defendant Evans or TECH USA] with or without cause (collectively "Termination of Employment"), [Defendant Evans] agree[s] that [he] shall not use for [his] own benefit, or the benefit of any third party, or disclose or divulge to any third party, any Confidential Information (as defined below) or Trade Secrets (as defined in the Maryland Uniform Trade Secrets Act)." Under such paragraph 1, "Confidential Information" means <u>inter alia</u>, information

> not generally known by [TECH USA's] competitors or the general public concerning [TECH USA], including, but not limited to: (a) its/their financial affairs, sales, and marketing strategies, acquisition plans, pricing and costs; ... (d) the names, addresses, telephone numbers, skill sets availability and wage rates of any contract employees and/or any other personnel [TECH USA] employs, recruits, supplies, or otherwise finds or arranges for its Customers.

22.     Paragraphs 3(c) and 3(d) of Defendant Evans' Confidentiality/Non-Competition Agreement provides (in pertinent part) that ". . . for twelve (12) months after Termination of Employment, [Defendant Evans] will not in any manner:"

> (c)  solicit, induce, attempt to solicit or induce, or assist others to solicit, induce or attempt to solicit or induce any Existing Customer or any Prospective Customer [defined, respectively, as

"any individual, business, corporation, or other entity which, at any time within the two (2) year period prior to the date of Termination of Employment" was a Customer or Prospective Customer of TECH USA] to terminate, eliminate, or reduce its business relationship with [TECH USA], or do anything, directly or indirectly to interfere with the business relationship, existing or prospective, between [TECH USA] and (i) any of their/its Customers. . .

(d) solicit, induce, attempt to solicit or induce, or assist others to solicit, induce or attempt to solicit or induce any employee or other individual, business, corporation or other entity associated with [TECH USA] to terminate his/her/its employment or association with TECH USA], nor will [he] directly or indirectly, interfere with the business relationship between [TECH USA] and any such individuals, businesses, corporations, and other entities.

23.     As requested by Defendant Evans, in paragraph 15 of the Confidentiality/Non-Competition Agreement, he and TECH USA negotiated and set forth the manner in which the parties would treat three Customers Evans had serviced from time to time in Dallas prior to joining Plaintiff's employment. In that paragraph 15, the parties, in connection with the issue of termination of his employment (whether by Defendant Evans or by TECH USA), provided for the joint right to do business with these three Customers:

if the termination of employment of Scott Evans is after July 24th, 2007, that TECH USA and all of its employees and Scott Evans and anyone he so chooses would have the right to continue to service and earn revenue from Countrywide Home Loans, Excel Telecommunications, and EMC Mortgage personnel regarding business matters, and neither party shall interfere with the others [sic] servicing and earning revenue from those three Customers on their own.

Defendant Evans and TECH USA also agreed that, except as expressly limited in paragraph 15 as to the three Customers identified therein, the covenants he agreed to in sections 1, 2, 3, 3(a), 3(b), 3(c), 4, 4(a), 4(b), and 12 of that Agreement "shall remain in full force in accordance with their terms."

10

24. With their post-termination campaign to destroy TECH USA's relationship with one or more of the three Customers designated in the Confidentiality/Non-Competition Agreement ¶ 15, Defendant Evans and Defendant PSI have interfered with Plaintiff TECH USA's "servicing and earning revenue" from one or more of those Customers, thereby breaching the express terms of Agreement ¶ 15 and damaging and irreparably harming Plaintiff.

25. Plaintiff's Chairman and CEO Mr. Howell risked his life savings, first in the start-up and acquisition of automotive franchises and other businesses in Maryland, and later risked a substantial part of his life savings in the start-up of TECH USA. Mr. Howell knows from personal experience that obtaining a customer, as well as external employees to work on assignment to that customer, and then retaining that customer and those valued employees in today's highly competitive marketplace, is a very difficult, time-consuming and investment-intensive process, especially in the staffing industry in which Plaintiff TECH USA competes.

26. From each of its offices, TECH USA expends a substantial amount of money, time, and other resources on its salespeople, training them to research their territory and find and acquire customers and develop customer relationships, and such resources on its recruiters, external employees/contractors and candidates. Plaintiff also makes major investments in national sales training conferences which all, or almost all, of its recruiters and/or account executives/salespersons attend. For even a well-trained salesperson, obtaining a new Customer can take, from initial "cold call" or introduction/referral, to arranging and participating in various meetings with Customer personnel and managers, to placing the first contract employee on assignment there with the Customer (or providing a new employee for direct placement with the Customer), can take several months.

11

27.   TECH USA invested heavily in Defendant Evans, beginning in July 2006 and continuing through 2007, in the Dallas office (which it relocated and expanded in 2007 at great expense) in expanding any Customer relationships Defendant Evans had when he joined TECH USA, and in the Professional Services vertical (or division) that Evans was supposed to lead and grow.  In the case of one of the Customers described in paragraph 15 of the Confidentiality/Non-Competition Agreement, while Defendant Evans had only made Direct Placements from Dallas with such Customer prior to joining TECH USA, Plaintiff expended substantial sums to develop Contract Assignments with such Customer from TECH USA's Florida, Pennsylvania, and Arizona offices.  Over his months of employment, Defendant Evans proved incapable of the intense servicing and follow-up needed to develop and maintain Contract Assignments. Furthermore, his leadership and management skills were lacking, as there was constant turnover in the Dallas office, and he proved unable to develop and mentor recruiters and junior salespeople. Due to Defendant Evans' lack of leadership ability and management skills, TECH USA's Professional Services vertical (or division) achieved little success, especially in the Dallas market.

28.   In training its Vice Presidents, managing directors, staffing salespeople and recruiters, TECH USA provides them with Confidential Information and Trade Secrets that TECH USA has developed over its ten-year history, affording the salesperson access to specific data on existing and prospective customers, internal employees, and external employees and candidates including but not limited to non-public contact information for all of those people, as well as methods, techniques, and tools to price Plaintiff's services and expand its business/servicing footprint within the customer's organization in order to grow TECH USA's offerings/services from finding personnel for one department within a customer (e.g. IT) to several departments with the

customer's organization (e.g. Engineering, Infrastructure/Telecomm, etc.) Confidential Information and Trade Secrets that TECH USA officers and salespeople, including Defendant Evans, receive in order to perform their jobs include corporate and other customer names; street addresses; telephone numbers; hiring manager, external employee and candidate contact information (including direct dial phone numbers and email addresses), pricing margins used in past transactions, skill sets availability and wage rates of TECH USA external employees, customer preferences on preferred staffing solutions -- whether they utilize Contract Assignments, Direct Placements, "Contract to Hire" (otherwise known as "Right to Hire") arrangements, or other staffing solutions -- in securing new personnel. All of the Confidential Information and Trade Secrets described above constitutes information that TECH USA has developed over many years with substantial effort and experience; Plaintiff has safeguarded that Confidential Information and those Trade Secrets - - it was not public information, nor was it readily available to Plaintiff's competitors. In fact, the Confidential Information and Trade Secrets would be very valuable to TECH USA's competitors, and it would take them substantial time and expense to ascertain. While a limited amount of the above Confidential Information and Trade Secrets (e.g., the customer's corporate names and a switchboard phone number) may be ascertainable outside of TECH USA's business, it is all of the elements (especially the contact information for all of the above people, email addresses and direct dial phone numbers), pricing margins, skill sets availability and wage rates of TECH USA external employees, and customer preferences on preferred staffing solutions that constitutes and provides the value, and the whole of that information is not known outside of Plaintiff's business.

29.    Only those employees of Plaintiff involved in management, sales and recruiting know the above Confidential Information and Trade Secrets, and TECH USA safeguards it by taking

13

such measures as (i) requiring that management, sales and recruiting employees of Plaintiff who need access to Confidential Information and Trade Secrets in order to service TECH USA customers and accounts sign Plaintiff's form Confidentiality/Non-Competition Agreement, which (among other things) explicitly protects those Trade Secrets and Confidential Information and requires the return of all TECH USA Company Property at termination of employment, (ii) not providing the above Confidential Information and Trade Secrets to third parties outside of TECH USA, and (iii) not posting Plaintiff's customer names, internal employee names, external employee or candidate names, or other customer or employee information on the TECH USA website; rather, the TECH USA Confidential Information and Trade Secrets are provided only to those management, sales and recruiting employees (who comprise a small percentage of Plaintiff's total employee roster) having a "need to know."   Access to the company database, beginning in the Spring of 2006 and continuing to date, is via unique user name and password only, which are inactivated when an employee leaves the company.   The above Confidential Information and Trade Secrets are extremely valuable to TECH USA and its competitors because, armed with that Information and those Secrets, a competing staffing firm or former employee of Plaintiff could initiate  business relationships with customers, internal employees, external employees and candidates TECH USA and steal business from Plaintiff.

30.   As described above, Plaintiff expends months of effort and much money in developing the Confidential Information and Trade Secrets.  Properly acquiring or duplicating the above Confidential Information and Trade Secrets, as a whole, would be difficult to accomplish because such Information and/or Secrets are not located in one publicly accessible database.  Instead, that body of knowledge is developed over many months after numerous cold calls, meetings, and lunches, and includes, as well, Plaintiff's experience in actual transactions

14

with customers, external employees, and candidates in order to determine pricing margins, skill sets availability and wage rates of TECH USA external employees, and customer preferences on staffing solutions provided.

## COUNT I

### Tortious Interference – Both Defendants

31.    Plaintiff TECH USA hereby incorporates paragraphs 1- 30 as if each were fully set forth herein.

32.    Plaintiff established contractual and other advantageous business relationships with its Customers, including, without limitation, one of more of the Customers listed in paragraph 15 of the Confidentiality/Non-Competition Agreement.

33.    Plaintiff was particularly effective in developing and expanding Contract Assignment business with one or more of those Customers, a method of business that Defendant Evans was unable to carry out and manage in the Dallas market area both before and after he became an employee of Plaintiff.

34.    Plaintiff established contractual and other advantageous business relationships with its contract (external) employees including, without limitation, contractors Crystal Hendrick and Mary Gamache, who worked on assignment to one of the Customers identified in paragraph 15 of the Confidentiality/Non-Competition Agreement.

35.    Each of the Defendants knew of TECH USA's contractual and other advantageous business relationships with those Customers and contract (external) employees.

36.    After his termination from Plaintiff's employment, Defendant Evans and/or Defendant PSI (or his or its agent) directly or indirectly contacted one or more of the Customers identified in such Para. 15 to advise that they should no longer do business with Plaintiff.

15

Among other things, Defendant(s) caused such customers (or one or more of them) to be informed that Plaintiff was "no longer willing to support [such Customer] because of concerns about [the Customer's] stability." Such statements were falsehoods knowingly made to those Customer(s) to cause them to cease doing business with Plaintiff, and Plaintiff was damaged and irreparably harmed thereby.

37.    Despite knowledge of such advantageous business relations and contractual relationships of Plaintiff, Defendants (jointly and severally) tortiously and, on information and belief, maliciously, intentionally and unjustifiably, interfered in TECH USA's business relations and contractual relations with one of more of the designated Customers and both contract (external) employees.  With respect to the employees, Defendants effectively solicited and encouraged them, as they were being recalled to their positions through TECH USA with a Customer that had previous laid them off, to breach their contractual and legal obligations to Plaintiff to resign their employment and/or not work for Plaintiff any longer, and/or to act for the benefit of Defendants Evans' and PSI's new enterprise(s) to the detriment of Plaintiff.  Under Defendant Evans' scheme, those two contractors (external employees) would simply work for him (or for Defendant PSI) - - on assignment to the same Customer that had contacted TECH USA about recalling them.

38.    Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of Defendants' tortious interference (as described above).  The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against both Defendants as follows:

16

(a)     Entry of a Preliminary and Permanent Injunction against both Defendants and their agents, servants and employees, and those acting in concert with them, enjoining them from further tortious interference.

(b)     Entry of an Order requiring an accounting by against both Defendants to TECH USA of their sales and revenues, as a result of their aforesaid acts in malicious tortious interference, and awarding Plaintiff punitive damages from both Defendants, jointly and severally, in the amount of One Million Dollars ($1,000,000).

(c)     Entry of a judgment against both Defendants, jointly and severally, for TECH USA's costs and expenses, including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to the fee and cost provision in paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant Evans.

## COUNT II

### Breach of Contract (Post-Term Covenant Not-to-Interfere with Plaintiff's Servicing and Earning Revenue form Certain Customers) – Defendant Evans only

39.     Plaintiff TECH USA hereby incorporates paragraphs 1- 38 as if each were fully set forth herein.

40.     Plaintiff established contractual and other advantageous business relationships with its customers, including, without limitation, one of more of the Customers listed in para. 15 of the Confidentiality/Non-Competition Agreement.

41.     Plaintiff was particularly effective in developing and growing Contract Assignment business with one or more of those Customers, something that Defendant Evans was unable to do in the Dallas market area both before and after he became an employee of Plaintiff.

17

42.    Defendant Evans knew of TECH USA's contractual and other advantageous business relationships with those Customers.

43.    Plaintiff and Defendant Evans expressly agreed in the penultimate sentence of Confidentiality/Non-Competition Agreement Para. 15 that "if the termination of employment of Scott Evans is after July 24th, 2007, that TECH USA and all of its employees and Scott Evans and anyone he so chooses would have the right to continue to service and earn revenue from Countrywide Home Loans, Excel Telecommunications, and EMC Mortgage personnel regarding business matters, and neither party shall interfere with the others servicing and earning revenue from those three Customers on their own."

44.    After his termination from Plaintiff's employment, Defendant Evans violated Confidentiality/Non-Competition Agreement Para. 15 by directly or indirectly contacting one or more of the Customers identified in such Para. 15 to advise that they should no longer do business with Plaintiff. Among other things, Defendant caused such Customers (or one or more of them) to be informed that Plaintiff was "no longer willing to support [such Customer] due to [the Customer's] lack of stability." Such statements were falsehoods knowingly made to those customer(s) to cause them to cease doing business with Plaintiff and also violated Agreement Para. 3c: Defendant Evans agreed therein that, after termination, he would not "do anything, directly or indirectly, to interfere with the business relationship" between TECH USA and any of its Customers. Defendant Evans' scheme was to withdraw business from Plaintiff and place that business with Defendant Evans and/or Defendant PSI.

45.    Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of Defendant Evans' contractual breaches described above. The harm cannot be fully recompensed in monetary damage, and is irreparable.

18

WHEREFORE, Plaintiff prays judgment against Defendant Evans as follows:

(a)     Entry of a Preliminary and Permanent Injunction against Defendant Evans and his agents, servants and employees, and those acting in concert with them, enjoining them from further contractual breach.

(b)     Entry of an Order requiring an accounting by against Defendant Evans to TECH USA of their sales and revenues, as a result of his aforesaid acts in violation of the express agreement he made in the penultimate sentence of Confidentiality/Non-Competition Agreement Para. 15 and Para. 3 c).

(c)     Entry of a judgment against Defendant Evans for TECH USA's costs and expenses, including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to the fee and cost provision in paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant Evans.

## COUNT III

### Breach of Contract (Post-Term Covenant Not to Solicit Employees) – Defendant Evans only

46.     Plaintiff TECH USA hereby incorporates paragraphs 1-45 as if each were fully set forth herein.

47.     Paragraph 3(d) of the Confidentiality/Non-Competition Agreement provides that ". . . for twelve (12) months after Termination of Employment, [Defendant Evans] will not in any manner . . . (d) solicit, induce, attempt to solicit or induce, or assist others to solicit, induce or attempt to solicit or induce any employee or other individual . . . associated with [TECH USA] to terminate his/her/its employment or association with TECH USA], nor will [he] directly or

19

indirectly, interfere with the business relationship between [TECH USA] and any such individuals. . . ."

48.    Plaintiff established contractual and other advantageous business relationships with its contract (external) employees including, without limitation, contractors Crystal Hendrick and Mary Gamache, who worked on assignment to one of the Customers identified in paragraph 15 of the Confidentiality/Non-Competition Agreement.

49.    Defendant Evans knew of TECH USA's contractual and other advantageous business relationship with those contract (external) employees.

50.    Defendant Evans, in violation of Confidentiality/Non-Competition Agreement paragraph 3(d), willfully solicited and induced (or assisted Defendant PSI to solicit or induce) the above-named contract (external) employees to terminate their employment or association with Plaintiff.

51.    Defendant Evans, in violation of Confidentiality/Non-Competition Agreement paragraph 3(d), directly or indirectly interfered with the business relationship between Plaintiff and such individuals.

52.    Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of Defendant Evans' breach of the post-term covenant not to solicit employees in Confidentiality/Non-Competition Agreement paragraph 3(d).    The harm cannot be fully compensated in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against Defendant Evans as follows:

(a)    Entry of a Preliminary and Permanent Injunction against Defendant Evans and his agents, servants and employees, and those acting in concert with them, enjoining them from further contractual breach.

20

(b)    Entry of an Order requiring an accounting by against Defendant Evans and his company to TECH USA of their sales and revenues, as a result of his aforesaid acts in violation of paragraph 3(d) of the Confidentiality/Non-Competition Agreement.

(c)    Entry of a judgment against Defendant Evans for TECH USA's costs and expenses, including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to the fee and cost provision in paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant Evans.

## COUNT IV

### Breach of Contract (Confidential Information – Defendant Evans only)

53.    Plaintiff TECH USA hereby incorporates paragraphs 1-52 as if each were fully set forth herein.

54.    Any and all use of TECH USA's Confidential Information by Defendant Evans for his own benefit (or for the benefit of a third party, including, without limitation, Defendant PSI) and/or merely the disclosure or divulging of Plaintiff's Confidential Information to any such third party is an activity in violation of paragraph 1 of the Confidentiality/Non-Competition Agreement.    In contacting certain external employees (contractors) of Plaintiff after the termination of his TECH USA employment, Defendant Evans wrongfully used and exploited Plaintiff's Confidential Information for his own benefit (or for the benefit of Defendant PSI). Among other things, the identity, contact information, skill sets availability and wage rates for all such employees is contractually protected TECH USA Confidential Information pursuant to Agreement ¶ 1 (d): Defendant Evans agreed therein not to use for his own benefit or for the benefit of any third party (such as Defendant PSI) or disclose or divulge to any third party "the

21

names, addresses, telephone numbers, skill sets availability and wage rates of any contract employees and/or any other personnel [TECH USA] employs, recruits, supplies, or otherwise finds or arranges for its Customers." *Id.*

55. Acts in violation of the Confidential Information provisions of Defendant Evans' Confidentiality/Non-Competition Agreement(s) have caused, and, unless enjoined, will continue to cause damage and irreparable harm to TECH USA. The harm cannot be fully compensated in monetary damages.

WHEREFORE, Plaintiff prays judgment as follows:

(a)     Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65, and paragraphs 1 and 5 of the Confidentiality/Non-Competition Agreement, enjoining Defendant Evans, his agents, servants, and employees, and all those acting in concert with them, from violating the Confidential Information provisions of such Agreement.

(b)     Entry of an Order requiring an accounting by Defendant Evans and his company to TECH USA of Defendant Evans' sales and revenues resulting from their unauthorized use of TECH USA's Confidential Information, as to which sales and revenues TECH USA may be entitled as a result of his aforesaid acts.

(c)     Entry of a judgment against Defendant Evans for TECH USA's costs and expenses, including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to the fee and cost provision in paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant Evans.

## COUNT V

### Statutory Trade Secret Misappropriation – Both Defendants

22

56. Plaintiff TECH USA hereby incorporates paragraphs 1-55 as if each were fully set forth herein.

57. As recited in paragraph 1 of the Confidentiality/Non-Competition Agreement, in addition to Confidential Information, Defendant Evans received from Plaintiff in the course of his employment Trade Secrets (as defined in the Maryland Uniform Trade Secrets Act) (the "Act"), Md. Comm. Law Code Ann. §11-1201(e).

58. Among the Trade Secrets entrusted to Defendant Evans during his employment with Plaintiff was the identity, contact information, skill sets availability and wage rates of various TECH USA external employees. Only those of Plaintiff's employees involved in management, sales and recruiting have access to TECH USA's Trade Secrets.

59. Any and all use of TECH USA's Trade Secrets by Defendant Evans for his own benefit (or for the benefit of a third party, including, without limitation, Defendant PSI) and/or merely the disclosure or divulging of Plaintiff's Confidential Information to any such third party is an activity in violation of the Act. In contacting certain external employees (contractors) of Plaintiff, Defendant Evans wrongfully misappropriated TECH USA's Trade Secrets for his own benefit (or for the benefit of Defendant PSI) in violation of the Act. The contact information for all such employees is a protected TECH USA Trade Secret because such contact information is information that TECH USA has developed over many years (with substantial effort and expenditures of resources) and that Plaintiff has safeguarded as Trade Secrets - - it was not public information, nor was it readily available to its competitors. In fact, the Trade Secrets would be very valuable to TECH USA's competitors, and it would take them substantial time and expense to ascertain such Trade Secrets.

60.    Only those of Plaintiff's employees involved in management, sales and recruiting have access to the above Trade Secrets, and TECH USA safeguards those Secrets by taking such measures as (i) requiring that those employees of Plaintiff who access Trade Secrets in order to service its customers and accounts sign the TECH USA-form Confidentiality/Non-Competition Agreement, which (among other things) explicitly protects Plaintiff's Trade Secrets and Confidential Information and requires the return of all TECH USA Company Property at termination of employment, (ii) not providing the Trade Secrets to third parties outside of TECH USA, and (iii) not posting such employee names and contact information on the TECH USA website. Instead, Plaintiff's Trade Secrets are provided to only those employees (who comprise a small percentage of TECH USA's total employee roster) having a "need to know," and access to the company database started in the Spring of 2006 is via unique user name and password only, which are inactivated when an employee leaves the company.

61.    Defendants Evans and PSI have misappropriated TECH USA's Trade Secrets after Termination of Employment, for their own benefit. On information and belief, such acts of Defendants in misappropriating TECH USA's Trade Secrets have been willful and malicious, and Defendants have sought actively to conceal them.

62.    Plaintiff has suffered damage and, unless such misappropriation is enjoined, will continue to suffer damage as a result of Defendants' unlawful misappropriation of Plaintiff's Trade Secrets. The harm cannot be fully recompensed in monetary damages, and is irreparable.

WHEREFORE, Plaintiff prays judgment as follows:

(a)    Entry of a Preliminary and Permanent Injunction against each of the Defendants and their agents, servants and employees, and all those acting in concert with any of them, enjoining them pursuant to § 1202 of the Act and paragraphs 1 and 5 of the

24

Confidentiality/Non-Competition Agreement from using or disclosing TECH USA's Trade Secrets for their own benefit and from otherwise violating the Act and/or paragraphs 1 and 5 of the Confidentiality/Non-Competition Agreement.

(b)     Entry of a judgment jointly and severally against both Defendants pursuant to § 1203 of the Act for exemplary damages in an amount not exceeding twice any damages award made under § 1203(a), because Defendants have (as stated above) engaged in a willful and malicious misappropriation.

(c)     Entry of a judgment jointly and severally against both Defendants for Plaintiff's costs and expenses, including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to the fee and cost provision in paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant Evans.

(d)     Entry of a judgment against both Defendants pursuant to § 1204 of the Act for Plaintiff's costs and expenses, including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding, since they have engaged in a willful and malicious misappropriation.

## COUNT VI

## Common Law Unfair Competition – Both Defendants

63.     Plaintiff TECH USA hereby incorporates paragraphs 1-62 as if each were fully set forth herein.

64.     Both Defendant Evans and Defendant PSI have committed the tort of unfair competition against Plaintiff.   On information and belief, they have acted unfairly and deceptively, and have acted deliberately, maliciously, and with reckless disregard for Plaintiff's rights and the rights of members of the public.

25

65.     Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of Defendants' unfair competition. The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against both of the Defendants as follows:

(a)     Entry of a Preliminary and Permanent Injunction against both Defendants and their agents, servants and employees, and those acting in concert with them, enjoining them from engaging in unfair competition with TECH USA.

(b)     Entry of an Order requiring an accounting by both Defendants to TECH USA of their sales and revenues, as a result of their aforesaid acts in violation of the common law of unfair competition, and awarding Plaintiff punitive damages from the Defendants, jointly and severally, in the amount of One Million Dollars ($1,000,000).

(c)     Entry of a judgment against both Defendants jointly and severally for TECH USA's costs and expenses, including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to the fee and cost provision in paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant Evans.

## COUNT VII

### Breach of Duty of Loyalty/Other Fiduciary Duties – Defendant Evans only

66.     Plaintiff TECH USA hereby incorporates paragraphs 1-65 as if each were fully set forth herein.

67.     As a highly compensated Vice President of Plaintiff's Dallas office, Defendant Evans owed a duty of loyalty and other fiduciary duties to Plaintiff.

68.    On information and belief, Defendant Evans breached his duty of loyalty and other fiduciary duties to Plaintiff:

(i)    by wiping clean (or causing to be wiped clean) the hard drive on the laptop computer that TECH USA issued him either during employment or after Termination of Employment (pursuant to Confidentiality/Non-Competition Agreement ¶ 12c, that hard drive and any email messages or other files stored thereon were Plaintiff's property and not Defendant Evans' property to do with as he pleased);

(ii)   by acting contrary to the best interests of his employer and principal, TECH USA, both during employment and after Termination of Employment;

(iii)  by soliciting, recruiting, and encouraging certain external employees (contractors) to terminate their relationship with Plaintiff and breach their contractual obligations, duties of loyalty, other fiduciary duties, and other obligations to TECH USA;

(iv)   by interfering with Plaintiff's business relationship with one or more of the Customers identified in Confidentiality/Non-Competition Agreement ¶ 15 (which is also a violation of Agreement ¶ 3 c);

(v)    by failing to act solely in the best interests of TECH USA;

(vi)   by concealing and failing to disclose his disloyal acts to Plaintiff; and

(vii)  by misusing and misappropriating information belonging to TECH USA which Plaintiff intended to be confidential and the disclosure of which is likely to cause irreparable harm to TECH USA.

69.    Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of Defendant Evans' breach of his duty of loyalty and other fiduciary duties. The harm cannot be fully recompensed in monetary damage, and is irreparable.

27

WHEREFORE, Plaintiff prays judgment against Defendant Evans as follows:

(a)     Entry of a Preliminary and Permanent Injunction against Defendant Evans and his agents, servants and employees, and those acting in concert with them, enjoining them from further breach of the duty of loyalty/other fiduciary duties.

(b)     Entry of an Order requiring an accounting by Defendant Evans to TECH USA of his sales and revenues, as a result of his aforesaid acts in malicious breach of the duty of loyalty/other fiduciary duties, and awarding Plaintiff punitive damages from Defendant Evans in the amount of One Million Dollars ($1,000,000).

(c)     Entry of a judgment against Defendant Evans for TECH USA's costs and expenses, including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to the fee and cost provision in paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant Evans.


Dated:  February 29, 2008          *Allan P. Hillman / tt d*
                                   Allan P. Hillman
                                   U.S. District Court Bar No. 119
                                   **SHIPMAN & GOODWIN LLP**
                                   One Constitution Plaza
                                   Hartford, CT  06103-1919
                                   (860) 251-5000
                                   ahillman@goodwin.com


                                   *Grover C. Outland III / tt d*
                                   Grover C. Outland III
                                   U.S. District Court Bar No. 24064
                                   TECH USA, Inc.
                                   8334 Veterans Highway
                                   Millersville, MD 21108
                                   (410) 987-1011
                                   outland@techusa.net