IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TECH USA, INC. | : | |
|     Plaintiff, | : | |
|     v. | : | Civil No. L-08-556 |
| | : | |
| J. SCOTT EVANS, et al. | : | |
|     Defendants. | : | |

**MEMORANDUM**

This breach of contract action arises from Plaintiff TECH USA, Inc.'s ("TECH USA") allegations that Defendant J. Scott Evans ("Evans") violated their confidentiality and non-compete agreement and committed other competition-based torts through Mr. Evans' operation of his company, Placement Solutions, Inc. ("PSI"). Now pending are (1) Defendants' Motion to Dismiss for Improper Venue Pursuant to Fed. R. Civ. P. 12(b)(3) or, Alternatively, to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), and (2) Plaintiff's Motion For Leave to File Surreply. Docket Nos. 9 and 12. The Court has reviewed the papers thoroughly and deems oral argument unnecessary. Local Rule 105.6. For the following reasons, the Court will DENY Defendants' Motion to Dismiss and DENY Defendants' Motion to Transfer Venue to the Northern District of Texas. In addition, the Court will DENY Plaintiff's Motion For Leave to File Surreply.

**I.       Background**

Plaintiff TECH USA is a Maryland corporation that provides customized staffing and consulting support to government and private sector clients nationwide. Mr. Evans is the sole shareholder and officer of PSI, a staffing firm which he formed on September 9, 2003, with the assistance of a financial backer, Mr. Rasmi Almadah. In March 2006, Mr. Evans purchased the business from Mr. Almadah and registered as an LLC. Both Mr. Evans and PSI reside, and are domiciled, in Texas. Beginning in November 2005, various representatives from TECH USA contacted Mr. Evans, seeking to form a partnership with Mr. Evans and PSI. Initially, the parties

proposed to structure the deal through an asset purchase, with TECH USA buying all assets of PSI. As the negotiations progressed through early 2006, however, TECH USA's President, Jason Beck, suggested restructuring the deal. He proposed an arrangement whereby Mr. Evans would be hired as an employee of TECH USA, with the understanding that Mr. Evans would bring in his contacts from PSI and assist TECH USA in developing the staffing portion of its business.

In June 2006, Mr. Evans received a contract from TECH USA's attorney regarding the proposed partnership. The contract contained a Confidentiality/Non-Competition Agreement ("the Agreement"), which sought to protect TECH USA's confidential information and trade secrets, and would require Evans to refrain from competing with TECH USA for a limited period of time and/or soliciting customers and employees after leaving its employ. The Agreement also contained a forum-selection clause effective upon the breach of the covenants relating to Confidential Information, Trade Secrets, Company Property, Non-Solicitation, and Non-Competition. In the event of any such breach, the signatories consented "to the jurisdiction of any federal or state court within the State of Maryland" and agreed to "waive all questions, issues, and defenses as to personal jurisdiction and venue for the purpose of carrying out this provision." Docket No. 1, Exh. A.

Mr. Evans and his attorney reviewed preliminary drafts of the Agreement and requested modification of certain provisions. A central area of dispute was TECH USA's forum-selection clause, to which Mr. Evans objected. After further negotiation, Mr. Evans returned a revised version of the Agreement to TECH USA, from which all language designating Maryland as the exclusive forum had been deleted. The parties were unable to come to an accord after two months of unsuccessful negotiations. Finally, on July 24, 2006, Mr. Beck sent an e-mail to Mr.

Evans which contained a version of the Agreement with the unmodified forum-selection clause. Mr. Beck stated in the e-mail that Mr. Evans would have 24 hours to accept the Agreement, or the offer would be terminated. Mr. Evans acquiesced to these terms, and signed the final version of the Agreement. Under the terms of the Agreement, TECH USA hired Evans as Vice President, Mortgage & Finance at its Dallas office, where he was employed at-will. Defendant PSI was not a signatory to the Agreement.

Mr. Evans was employed in that capacity until January 7, 2008, when was terminated from his position at TECH USA. In the weeks following his severance from TECH USA, the company charges that Mr. Evans violated the post-termination terms of the Agreement through his continued contacts with TECH USA clients, among other alleged violations. TECH USA filed this seven-count suit against Evans and PSI on March 3, 2008.

## II.     Choice of Law and Standard of Review

### A.     Choice of Law

It is now well-established in the Fourth Circuit that "a motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue." Sucampo Pharms., Inc. v. Astellas Pharma, Inc., 471 F.3d 544 (4th Cir. 2006); Silo Point II, LLC v. Suffolk Constr. Co., No. 08-999, 2008 U.S. Dist. LEXIS 76018, at *5 (D. Md. Sep. 25, 2008). When the validity of a forum-selection clause is challenged under Rule 12(b)(3), a district court must first decide whether to apply state or federal law. See Koch v. America Online, Inc, 139 F. Supp. 2d 690, 692 (D. Md. 2000). In a diversity action such as this one, courts in the District of Maryland apply state law in determining the applicability of forum-selection clauses, pursuant to the Fourth Circuit's unpublished decision in Nutter v. New Rents, Inc., No. 90-2493, 1991 U.S. App. LEXIS 22952 (4th Cir. Oct. 1, 1991). See Belfiore v.

Summit Fed. Credit Union, 452 F. Supp. 2d 629, 632 n.3 (D. Md. 2006); Davis Media Group, Inc. v. Best Western Int'l, Inc., 302 F. Supp. 2d 464, 466 (D. Md. 2004) (noting that "in diversity cases . . . the Fourth Circuit applies state law to determine enforceability" of forum-selection clauses); Eisaman v. Cinema Grill Sys, Inc., 87 F. Supp. 2d 446, 448 (D. Md. 1999). Accordingly, the Court will apply state law in its analysis of the validity of the forum-selection clause here at issue.

      B.      Forum-Selection Clause

The Supreme Court held in The Bremen v. Zapata Off Shore Co., 407 U.S. 1, 10 (1972) that a forum-selection clause is prima facie valid and should be enforced unless "unreasonable" under the circumstances. Either party may overcome this presumption of validity with a clear showing that the forum-selection clause is "unreasonable," as evidenced by the following factors: (1) formation was induced by fraud or overreaching, (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum, (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy, or (4) enforcement of the forum-selection clause would contravene a strong public policy of the forum state. Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996) (summarizing Bremen, 407 U.S. at 12-18). The burden of proving the unreasonableness of a forum-selection clause is a heavy one, which requires a "strong showing" that the chosen forum should be set aside. See Bremen, 407 U.S. at 15. See also Carnival Cruise Lines v. Shute, 499 U.S. 585, 592 (1991).

The Maryland Court of Appeals in Gilman v. Wheat, First Sec. Inc., 345 Md. 361 (1997) adopted the Bremen "unreasonableness" standard for determining the validity of forum-selection clauses. In so doing, the Gilman court re-stated the Bremen test as follows: a forum-selection


clause is "unreasonable" if (1) it was induced by fraud or overreaching, (2) the contractually selected forum is so unfair and inconvenient as, for all practical purposes, to deprive the plaintiff of a remedy or its day in court, or (3) enforcement would contravene a strong public policy of the State where the action was filed." Id. at 378. In the instant case, the parties have briefed the issue under both the Bremen and Maryland standards. Accordingly, the Court will apply the Bremen test, as adopted by the Maryland Court of Appeals in Gilman.[1]

Preliminary to analyzing the "reasonableness" of a forum-selection clause under Bremen, the Court must settle the threshold issue of whether the forum-selection clause is mandatory or permissive. See Davis Media Group, 302 F. Supp. 2d at 467. Only mandatory forum-selection clauses are enforced under the Bremen standard. Eisaman, 87 F. Supp. 2d at 449. Permissive forum-selection clauses, on the other hand, should not be dismissed under Rule 12(b)(3), as they permit jurisdiction in the selected forum without "precluding it elsewhere." Davis Media Group, 302 F. Supp. 2d at 467. A mandatory forum-selection clause is "one containing clear language showing that jurisdiction is appropriate only in the designated forum." Koch, 139 F. Supp. 2d at 693 (citing Excell, Inc. v. Sterling Boiler and Mech., Inc., 106 F.3d 318, 321 (10th Cir. 1997) (internal quotation omitted)).

C. Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)

Defendants have moved in the alternative to transfer venue pursuant to 28 U.S.C. §

[1] As stated, applying Maryland law leads us to the Bremen standard because the Maryland Court of Appeals has adopted this rule for determining the validity of a forum-selection clause. Were this case to be transferred to the Northern District of Texas, as Defendants have requested, the Bremen test would nevertheless apply. This is so because federal law, rather than state law, is used to determine the validity of forum-selection clauses within the Fifth Circuit. See Haynsworth v. Corporation, 121 F.3d 956, 962 (5th Cir. 2005) (the Bremen standard applies in both federal question and diversity cases).

1404(a), which provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  A motion to transfer under § 1404(a) must be analyzed under the standard set forth in Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29-31 (1988), which requires district courts to weigh several case-specific factors in deciding whether to transfer venue.  Furthermore, if the parties have signed an agreement containing a forum-selection clause, the court must consider the convenience of the contractual forum, the fairness of a transfer in light of the forum-selection clause and the parties' relative bargaining power.  Id. at 29.  The presence of a forum-selection clause, while not dispositive of the issue, will nonetheless "be a significant factor that figures centrally in the district court's calculus."  Id.

In the District of Maryland, the following case-specific factors are essential to the analysis of a § 1404(a) motion in a case involving a valid forum-selection clause: "(1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice."  Lynch v. Vanderhoef Builders, 237 F. Supp. 2d 615, 617 (D. Md. 2002).  The burden is on the movant to show that transfer to another forum is proper.  Id.  Ultimately, however, the decision whether to transfer is committed to the sound discretion of the district court.  Southern Ry. Co. v. Madden, 235 F.2d 198, 201 (4th Cir.), cert. denied, 352 U.S. 953 (1956).

**III.   Discussion**

    A.   Mandatory or Permissive Nature of the Forum-Selection Clause

The forum-selection clause contained in the Agreement between TECH USA and Mr. Evans stated that the parties did:

> hereby consent, in any action brought in connection with any matters described in

paragraph 5 of the Agreement [providing for injunctive relief where TECH USA has been caused immediate and irreparable harm], to the jurisdiction of any federal or state court within the State of Maryland, and [they] waive all questions, issues, and defenses as to personal jurisdiction and venue for the purpose of carrying out this provision.

Docket No. 1, Exh. A.  The Court finds that this language unambiguously expresses the parties' consent to suit in *any* state or federal court located in Maryland.  See Davis Media Group, 302 F. Supp. 2d at 468 (forum-selection clauses using the word "shall" or referring to "*all* suits and special proceedings brought" were mandatory).  Moreover, the Court must give effect to the plain meaning of the language explicitly waiving "all questions, issues, and defenses as to personal jurisdiction and venue."  See Sterling Forest Assocs. v. Barnett-Range Corp., 840 F.2d 249, 251 (4th Cir. 1988) (under established principles of contract construction, clauses which "are knowingly incorporated into a contract should not be treated as meaningless").  Finally, the Court notes that TECH USA has not disputed the mandatory nature of the forum-selection clause.  In light of these facts, the Court holds that the forum-selection clause contained in the Agreement is mandatory and will, therefore, apply the Bremen test for "reasonableness."

Rather than disputing the mandatory nature of the forum-selection clause, Defendants argue that PSI should not be bound by the Agreement because only Mr. Evans (and not PSI) was a signatory to the contract with TECH USA.  TECH USA acknowledges that PSI was not a party to the Agreement, but notes that Mr. Evans entered into the Agreement "with the disclosed full intent" to use PSI "as a vehicle to perform that contract to completion."  Docket No. 12.  Moreover, TECH USA asserts that PSI was "so closely related to the dispute that it was foreseeable that PSI would be bound in the event of any dispute."  Id.

The Court agrees that while PSI was not a signatory to the Agreement, it is, nevertheless, subject to the forum-selection clause because the company was "closely related" to Mr. Evans.

7

See Belfiore v. Summit Fed. Credit Union, 452 F. Supp. 2d 629, 633 (D. Md. 2006) (acknowledging that "it is generally held that all participants, parties, and non-parties are covered by choice of forum clauses so long as their alleged conduct is 'closely related' to the contract in question"). See also Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993) (finding that "the corporations owned and controlled by [the plaintiff] are so closely related to the dispute that they are equally bound by the forum-selection clause"); Manetti-Farrow, Inc. v. Gucci Am. Inc., 858 F.2d 509, 514 n. 5 (9th Cir. 1988); Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 202-03 (3d Cir. 1983). Mr. Evans, as sole shareholder and officer of PSI, could have foreseen that the terms of his employment with TECH USA were explicitly based upon his operation of PSI. Indeed, the record indicates that PSI was considered, for a time, as a "division" of TECH USA. See Docket No. 12, Exhs. 1-2. The Court holds, therefore, that PSI was so "closely related" to Mr. Evans that it is likewise bound by the forum-selection clause of the Agreement between Mr. Evans and Mr. Beck.

    B.    <u>Reasonableness of the Forum-Selection Clause</u>

In challenging the validity of the forum-selection clause, Defendants' main argument is that enforcement of the clause would be "unreasonable" under Bremen.

    1.    **Induced by Fraud or Overreaching**

Defendants claim that Mr. Evans' consent to the terms of the Agreement - specifically, TECH USA's forum-selection clause - was "a product of overreaching" or "the abuse of economic power or other unconscionable means." Docket No. 9. Mr. Evans supports this defense with evidence of Mr. Beck's 24-hour "take it or leave it" proposal which closed several rounds of contract negotiations. Mr. Evans now asserts that he felt compelled to agree to Mr. Beck's terms because Mr. Evans had already disclosed his contacts with his major client,

Countrywide, and worried that he would lose their business if he did not sign the contract. Mr. Evans characterizes himself as a naïve and inexperienced businessman, albeit one who has earned a bachelor's degree in business administration and started a successful staffing firm. According to Mr. Evans, TECH USA preyed upon his lack of financial resources and decreased bargaining power, which heavily influenced his decision to accept TECH USA's terms. Moreover, Mr. Evans states that his precarious financial position will cause him to suffer prejudice if forced to litigate in an out-of-state forum.

The Court declines to hold that TECH USA's conduct during the two months of negotiations was unconscionable, overreaching, or abusive.  In Maryland, an "unconscionable" contract is one characterized by "extreme unfairness" demonstrated through "(1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party." Walther v. Sovereign Bank, 386 Md. 412, 426 (2005).  The record indicates that both parties to the contract engaged in bargaining, with each side offering and receiving concessions.  While Mr. Evans ultimately relinquished his preferred choice of forum, he nonetheless received the addition of Paragraph 15 of the Agreement, which excludes Mr. Evans' relationships with three major PSI clients from the terms of the non-compete clauses.  The Court acknowledges that Paragraph 15 was not necessarily granted to Mr. Evans as a quid pro quo exchange for TECH USA's forum-selection clause, but merely notes that this tradeoff illustrates the fairness of the bargaining process.  Even if the Court accepts Mr. Evans' claims of inexperience and naïveté, it cannot overlook the fact that Mr. Evans was assisted by his attorney during these negotiations. Indeed, Mr. Evans' clear understanding of the consequences of accepting TECH USA's forum-selection clause is evidenced by his attempt to remove the provision in its entirety.  The Court concludes that TECH USA's "hard bargaining" does not rise to the level of "unconscionable"

conduct.

Finally, Defendants allege that Mr. Evans signed the Agreement under duress because he "felt he had no choice" but to sign the final offer. Docket No. 9. The legal standard for establishing "duress" under Maryland law requires "a wrongful act which deprives an individual of the exercise of his free will." Eckstein v. Eckstein, 38 Md. App. 506, 513 (1978); Central Bank v. Copeland, 18 Md. 305, 317-18 (1862). Even if Mr. Evans rightly believed that his professional interests required him to accede to TECH USA's terms, he maintained his right to exercise his free will throughout the negotiation. The Court holds, accordingly, that Mr. Evans has not carried his "heavy burden of demonstrating unreasonableness" due to any acts of fraud or overreaching by TECH USA. Bremen, 407 U.S. at 15.

### 2. Selected Forum Unfair and Inconvenient

Nor can Mr. Evans convincingly argue that "mere inconvenience or additional expense" of conducting the litigation in Maryland is "unreasonable" under Bremen. Davis Media Group, 302 F. Supp. 2d at 469 (quoting Central Contracting Co. v. Maryland Casualty Co., 367 F.2d 341, 344 (3d Cir. 1996)). While Defendants may suffer some inconvenience by litigating in this forum, Mr. Evans undoubtedly foresaw this inconvenience when he signed the final version of the Agreement with the unmodified forum-selection clause. See Bremen, 407 U.S. at 17-18 (noting that any inconvenience the plaintiff "would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting"). See also Eisaman, 87 F. Supp. 2d at 452 (acknowledging that "increased expenses are inherent in a forum-selection clause"). Mr. Evans implicitly accepted these added litigation expenses, including the possibility that material witnesses would reside outside of the selected forum, when he signed the Agreement. Consequently, Defendants have failed to satisfy their burden of

demonstrating that the selected forum is "so gravely difficult and inconvenient" as to deprive them of their day in court.[2]  Bremen, 407 U.S. at 17-18.

### 3.      Against Public Policy of Forum State

Finally, Mr. Evans argues that enforcement of the forum-selection clause will violate Maryland public policy by operating as a waiver of his right to pursue certain statutory remedies. Mr. Evans alleges that TECH USA failed to remit his final paycheck within six days of his termination, as required under Texas law.  See Tex. Lab. Code § 61.014.   By statute, Texas law provides a remedy for employees who have not been paid in accordance with the Texas pay day laws.  In order to preserve his statutory claim, Mr. Evans must file with the Texas Workforce Commission within 180 days after the wages are due.  See Tex. Lab. Code § 61.051 et seq.  Mr. Evans holds that maintaining jurisdiction in this forum would operate as a waiver of his right to pursue his statutory wage claim and, accordingly, would contravene public policy.  See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 n. 19 (1985) (stating that "in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy"); In Re Eternity Shipping, Ltd., 444 F. Supp. 2d 347, 382 (D. Md. 2006).

TECH USA responds that Mr. Evans' wage claim is capable of being heard in this Court

---

[2]     In most cases, it is of no consequence where the case is actually litigated.  The fact that venue is in this District, rather than the Northern District of Texas, does not necessarily increase the costs of litigation for the out-of-state party.  This Court conducts much of its business (e.g., discovery hearings, scheduling conferences) via telephone.  Moreover, this Court follows the rule that witnesses are to be deposed where they live or work.  See Scotch Whiskey Asso. v. Majestic Distilling Co., No. 88-808, 1988 U.S. Dist. LEXIS 16531, at *9 (D. Md. Nov. 30, 1988).

and, moreover, has agreed to waive any argument to the contrary. See Docket No. 12. The Court confirms this point, and likewise finds implausible Mr. Evans' concern that his statutory claim will be prejudiced in this forum because "jurors in Maryland would not have as much of a concern for Defendant Evans' pay day claims as jurors in the state of Texas." Docket No. 9. Mr. Evans' Texas state law claims are wholly capable of being adjudicated in this forum by a fair and impartial jury. Alternatively, Mr. Evans may pursue an administrative claim with the Texas Workforce Commission. Tex. Lab. Code § 61.051. Once he has exhausted his administrative remedies, he may file an appeal in the Northern District of Texas, where he resides. See Tex. Lab. Code § 61.062. There are no barriers to Mr. Evans' pursuit of the state claim either as part of the present litigation, or in pursuing an administrative claim with the Texas Workforce Commission. Accordingly, enforcement of the forum-selection clause will not violate public policy.

Having failed to demonstrate that enforcement of the forum-selection clause would be "unreasonable" under the Bremen test, the Court hereby DENIES Defendants' Motion to Dismiss for Improper Venue.

    C.    Transfer of Venue Pursuant to 28 U.S.C. § 1404(a)

Defendants have moved, in the alternative, to transfer the case to the United States District Court for the Northern District of Texas. The Court must consider the following factors in deciding a motion to transfer pursuant to § 1404(a): (1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice. Lynch v. Vanderhoef Builders, 237 F. Supp. 2d 615, 617 (D. Md. 2002).

Defendants argue that the Northern District of Texas is the more appropriate venue because all events giving rise to the cause of action were allegedly committed at Mr. Evans'

office or residence in Dallas, Texas. Application of the Lynch factors, however, demonstrates that venue should remain here, in the contractual forum. While Defendants have stated that several material witnesses reside in Texas, Plaintiffs likewise identify material witnesses residing in Maryland. Defendants may be somewhat disadvantaged by residing outside the selected forum in Maryland, but these difficulties are not insurmountable. For instance, Defendants may depose those witnesses who are unable or unwilling to travel to Maryland to testify at trial. Even if the Court were to transfer the case to Defendants' selected forum, the effect would be merely to "shift the balance of inconvenience" to the Plaintiff. Dicken v. United States, 862 F. Supp. 91, 93 (D. Md. 1994) (quoting Bd. of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc., 702 F. Supp. 1253 (E.D. Va. 1988)).

The Court finds that the interests of justice are served by enforcing the parties' forum-selection clause, as this "protects their legitimate expectations" in entering the Agreement. Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring); Davis Media Group, 302 F. Supp. 2d at 470. Because Defendants have failed to carry their burden, the Court hereby DENIES their motion for transfer pursuant to 28 U.S.C. § 1404(a).

      D.      <u>Motion for Leave to File Surreply</u>

An additional matter before the Court is TECH USA's Motion for Leave to File Surreply. Pursuant to Local Rule 105.2(a), surreply memoranda are not permitted unless otherwise ordered by the Court. The Court may permit surreply when the moving party would be unable to contest matters presented to the Court for the first time in the opposing party's reply. Khoury v. Meserve, 268 F. Supp. 2d 600, 605 (D. Md. 2003) (citing Lewis v. Rumsfeld, 154 F. Supp. 2d 56, 61 (D.D.C. 2001)).

TECH USA asserts that it must file a surreply in order to contest Mr. Evans' allegations

that TECH USA defrauded him into signing the Agreement.  Because the Defendants did not raise this allegation of fraud until its reply to TECH USA's opposition to its Motion to Dismiss (Docket No. 9), TECH USA would otherwise have no opportunity to respond to this charge without leave of Court.

Although Defendants' allegations of fraud were not introduced until after TECH USA filed its sole allotted reply memorandum, the Court finds that a surreply is not necessary for the resolution of this matter.  The Defendants only cursorily address these allegations of fraud, broadly stating that "[a]ll of the elements of common law fraud exist in the instant case."  Docket No. 14, ¶ 4.  In support of their fraud claim, the Defendants make the following assertions: (1) that Mr. Beck falsely represented to Defendants that TECH USA would purchase the assets of PSI for "six figures" and would provide Mr. Evans with TECH USA's vast recruiting resources, (2) that Mr. Beck knew these statements were false and made them to induce Mr. Evans' disclosure of confidential information regarding PSI, (3) that Mr. Evans relied on Mr. Beck's false statements to his detriment when he "turned over the PSI business" to TECH USA, and (4) that he was "forced" by TECH USA's "one hour ultimatum" to sign the contract containing the original forum-selection clause.  Id.

These assertions, however, contradict the evidence submitted in the Defendants' Motion to Dismiss as well as the affidavits of both Mr. Evans and Mr. Beck.  The Defendants' Memorandum in support of their Motion to Dismiss attests that Mr. Evans was fully aware of the terms contained in the final version of the Agreement and was not induced by an alleged fraud to sign the contract, even if he did succumb to pressure in accepting those terms.[3]  Consequently,

---

[3] The Defendants indicate their awareness of the terms of the Agreement as follows: "The email [from Mr. Beck] provided that Defendant Evans had 24 hours to accept the agreement

Mr. Evans' fraud claim is essentially a regurgitation of his duress claim, dressed in the Emperor's proverbial "new clothes."  Because Defendants have not "raise[d] any new issues or legal theories in their reply brief," there is no need for TECH USA to respond to these allegations at this time.  <u>Interphase Garment Solutions, LLC v. Fox Tv Stations, Inc.</u>, 566 F. Supp. 2d 460, 466 (D. Md. 2008).  Consequently, the Court hereby DENIES Plaintiff TECH USA's Motion for Leave to File Surreply.

**IV.   Conclusion**

The Court will enforce the instant forum-selection clause, finding it to be mandatory in nature and not "unreasonable" under the <u>Bremen</u> standard.  Accordingly, Defendants' Motion to Dismiss for Improper Venue pursuant to Fed. R. Civ. P. 12(b)(3) is hereby DENIED.  The Court also DENIES Defendants' Motion to Transfer pursuant to 28 U.S.C. § 1404(a).  Finally, the Court will exercise of its discretion under Local Rule 105.2(a) and DENY Plaintiff TECH USA's Motion for Leave to File Surreply.  A separate Order follows.

It is so ORDERED this 7th day of January, 2009.

                                                                                                               /s/
                                                            Benson Everett Legg
                                                            Chief Judge

---

as is or the deal was off.  Instead of purchasing the assets of Defendant Placement Solutions, the deal only included employment with the Plaintiff."  Docket No. 9, ¶ 9.  Mr. Evans' and Mr. Beck's affidavits further attest to both parties' knowledge of the final terms of the Agreement which they signed.  <u>See</u> Docket Nos. 9, 12, and 14.